WILLIAM S. GILCHRIST and others, *v.* SILAS COMFORT.

The mode of obtaining title to land sold under execution is wholly a creation of the statute, and its provisions must be strictly followed. Per WRIGHT, J.

Since the act of 1847 (ch. 410), a redemption by a creditor, on the last day of redeeming, to be valid and effectual, must be made at the office of the sheriff of the county in which the sale took place.

APPEAL from order of Supreme Court, granting a new trial, with stipulation for judgment absolute. The action was for the recovery of certain real property, situate in the town of Springfield, in the county of Otsego, and was commenced in 1859, by Charles Gilchrist, the ancestor of the present plaintiffs, who died pending the suit, and his heirs-at-law have been substituted.

The cause was tried at the Otsego Circuit, in December, 1859, before Mr. Justice MASON and a jury. The jury, under the direction of the court, rendered a verdict in favor of the plaintiffs, and the court ordered the exceptions taken by the defendant to be heard, in the first instance, at a General Term of the Supreme Court. The exceptions were heard at a General Term of the court, sitting in the sixth district, in July, 1864, and the verdict set aside and a new trial granted; and from the latter order, the present appeal is taken.

The leading facts disclosed on the trial were these: The premises sought to be recovered were, in 1852, owned by one Benjamin Barrett. About the 20th March, 1852, sundry attachments were issued out of the Supreme Court against Barrett, as an absconding debtor, and, among them, two in favor of Charles Gilchrist, under which the sheriff attached the real estate in question. Judgments were obtained in these suits, in June, 1852; those in favor of Gilchrist on the 12th June. Executions were issued on the judgments, and placed in the hands of the sheriff of the county of Otsego, and under them (or some of them), the sheriff, on the 5th October, 1852, sold the premises in controversy to Harvey L. Farnham, for the sum of $235, he being the highest bidder,

and delivered to him a certificate of sale. Gilchrist and his attorney were present at the sale, and the attorney, on his behalf, directed the sheriff not to sell on his executions, and the sheriff replied that he would not, but would sell upon the executions in his hands that were prior in their liens. The executions, however, were not actually withdrawn, and there was no announcement to bidders that the sale would not take place under them.

Gilchrist, as a judgment creditor, subsequently took steps to redeem the premises from the sale to Farnham. On the 5th January, 1854, being the last day of the fifteenth month for redemption, at about half-past 9 o'clock in the evening, his attorney, acting in his behalf, presented to the sheriff, at his dwelling-house, in the village of Cooperstown (the sheriff's office being in another part of the village), copies of dockets of two judgments in his favor against Barrett, rendered June 12, 1852, one for $352.08, and the other for $706.90, being the same judgments upon which executions had been issued, and remained in the hands of the sheriff at the time of the sale on the 5th October, 1852; also affidavits of the true sums due on such judgments; and at the same time paid the sheriff $255.75, as and for the amount of Farnham's bid. There was evidence tending to show that, in the afternoon of the said 5th January, the attorney of Gilchrist went to the office of the sheriff several times to make the redemption, but did not find the sheriff there, although he was in his office once or twice that afternoon and evening, and the sheriff had a deputy in the office once in the afternoon and once in the evening, when the attorney called and inquired for the sheriff. This attempt at redemption at the sheriff's dwelling house, was the only one ever made by Gilchrist. There was no attempt to redeem at the sheriff's office, although an officer was there present to whom the redemption could have been made.

On the 20th March, 1855, the sheriff gave a deed of the premises to Farnham, the purchaser at the sale on the 5th October, 1852; and on the 31st March, 1855, Farnham conveyed them to the trustees of the First Methodist Episcopal

Church of Springfield, and the defendant Comfort, being the pastor of the church, was in possession of the premises at the commencement of this suit, claiming under the title from Farnham.

Gilchrist, claiming the validity of his redemption, procured the sheriff of Otsego to convey to him the premises, by deed, on the 11th June, 1857, and under this he claimed title.

The whole question, therefore, in the case, was as to the validity of Gilchrist's redemption attempted to be made on the 5th January, 1854. During the trial, all the questions relating to its validity and the right of the plaintiff (Gilchrist) to recover were made in various forms, and particularly on a motion for a nonsuit, and by exceptions to the charge and rulings of the circuit judge.

The circuit judge denied a motion for a nonsuit on the specific ground that the plaintiff had made no valid redemption; and ruled and decided, 1st. That the plaintiff was entitled, as a judgment creditor, to redeem the premises in question from the sale made by the sheriff; 2d. That the plaintiff, as such judgment creditor, made a redemption of said premises according to and in compliance with the requirements of the statute; 3d. That, although the redemption was made on the last day of the fifteen months, and not at the sheriff's office, but at his dwelling house, at half-past 9 o'clock P. M., it was as valid as if made to the deputy at the sheriff's office on that day, at any time before 5 o'clock in the afternoon; 4th. That such redemption being to the sheriff himself, it was not necessary under the statute to be made at the sheriff's office. To each of these rulings, holding the redemption valid, exceptions were duly taken. The judge directed a verdict for the plaintiff; and, as has been stated, such verdict was set aside at the General Term, and a new trial ordered. From the order granting a new trial the plaintiffs appeal, assenting that, if the order be affirmed, judgment absolute shall be rendered against them.

*D. C. Bates*, for the appellants.

*J. H. Reynolds*, for the respondent.

WRIGHT, J. The premises, on the 5th October, were purchased by Harry L. Farnham, at a sale made by the sheriff of the county of Otsego, under executions upon judgments against one Benjamin Barrett, and on the 20th March, 1855, he received a sheriff's deed thereof in pursuance of his purchase. On the 3d March, 1855, Farnham conveyed the title thus acquired to the trustees of the First Methodist Episcopal Church of Springfield, and the defendant Comfort, as the pastor of the church, was, at the commencement of the suit, in possession of the premises claiming under the title from, Farnham. The plaintiff, Gilchrist, claimed title to the premises, as a redeeming creditor, from the sale to Farnham, and the material questions are, as to his right and the validity of his proceedings to redeem. If he made no legal redemption he had no title to the premises.

There is no controversy as to the facts on which the questions arise. In June, 1852, Gilchrist recovered two judgments against Barrett, upon which executions were forthwith issued and were in the hands of the sheriff, with others of older and younger date, at the time he advertised to sell, and sold the premises. At the sale, and before it opened, Gilchrist directed the officer not to sell under his executions, and the officer replied that he would not; but the executions were not actually withdrawn, nor was there any formal announcement to bidders that the sale would not take place under them. The sale proceeded, and Farnham purchased the premises, receiving the usual certificate of sale. On the last day of the fifteen months in which a creditor may acquire the title of a purchaser, at a sheriff's sale of lands on execution (or as it may be more shortly expressed, redeem the premises) at about half-past nine o'clock in the evening, Gilchrist's attorney presented to the sheriff, in his behalf, at the sheriff's dwelling house, in the village of Cooperstown (the sheriff's office being in another part of the village), copies of the dockets of the two judgments recovered against Barrett in June, 1852, duly certified (being the same judgments upon which executions had been issued and remained in the hands of the sheriff at the time of the

sale) with affidavits of the true sum due on the judgments; and, at the same time, paid to the sheriff the sum of $255.75, as and for the amount of Farnham's bid, and interest thereon from the time of sale. This was the only step ever taken by Gilchrist to redeem, and subsequently, in disregard of this proceeding, as has been stated, the sheriff completed the sale by conveying the premises to Farnham, the original purchaser.

The mode of obtaining title to land sold under execution by redemption, is wholly a creation of the statute, and its provisions must be strictly followed. The statute provides that after one year and before the expiration of fifteen months from the time of sale, any creditor having a judgment that is a lien or charge upon the premises sold, may acquire the title of the purchaser at such sale, or in other language, redeem the premises by paying the amount of the purchaser's bid with interest thereon from the time of sale; and that whenever any such creditor shall have acquired the title of the original purchaser, any other creditor who might have acquired such title, may become a purchaser thereof from the first creditor who acquired the same, by reimbursing to him the sum paid by him to acquire such title, with interest, and also, if his judgment be prior to that of such second creditor, and be a lien as against the other, the amount due on such judgment; and in the same manner, any third or other creditor who might have acquired the title of the original purchaser, may become a purchaser thereof from the second, third or any other creditor, upon the same terms and conditions; (2 R. S., 371, 372, §§ 51, 52, 53, 54, 55, 56.) It is further provided that the sums required to be paid to acquire the title of the original purchaser, or to become a purchaser from any creditor, may be paid to such purchaser or creditor, or to the officer who made the sale for the use of the purchaser entitled to the same; and that to entitle any creditor to acquire the title of the original purchaser, or to become a purchaser from any other creditor, he shall present and leave with such purchaser or creditor, or the officer who made the sale, a copy of the docket of the

judgment or decree under which he claims the right to purchase, duly certified by the clerk of the court or of the county in which the same is docketed, and an affidavit by such creditor of the true sum due on such judgment or decree, at the time of claiming such right to purchase. (§§ 59, 60.)  Thus, a creditor having a lien, by judgment or decree, on the premises sold (unless they were sold under his execution) after one year and before the expiration of fifteen months from the time of sale may, in the way prescribed and pointed out by the statute, acquire the title of the purchaser at the sheriff's sale, and having acquired such title any other creditor entitled to acquire it, may become a purchaser thereof from the first creditor who acquired the same, upon the terms and conditions specified, and so on until the expiration of the fifteen months, any third or other creditor entitled to acquire the title of the original purchaser, may become a purchaser thereof upon like terms and conditions from the second, third or any other creditor who may have become such purchaser.  In short, a creditor, during the last three months of the fifteen, having a lien on the premises by judgment or decree, may, in the mode prescribed by the statute, redeem them from the original purchaser; and until the expiration of the fifteen months, creditors entitled to redeem may redeem successively from each other upon the terms and conditions prescribed.  This redemption, as is seen by the statute cited, was required to be made to the original purchaser, or to the creditor that had previously acquired his title, or to the officer who actually sold the land; and the time for making them expired at the end of the fifteenth month.  This "auction among the creditors for the land," as it has been not inaptly termed, might be carried on anywhere, through the officer making the sale, up to the last hour of the last day.  But in 1847, an act was passed (Laws of 1847, chap. 410), the third section of which declared that "*all* redemptions which shall hereafter be made *on* or after the last day of the fifteen months by any creditor, shall be made at the sheriff's office of the county in which the sale took place," and added, "that it shall be the duty of the

officer making the sale, to attend at said office during the last day for making such redemptions, and during the time thereafter in which such redemptions may be made, and in case of the absence of the officer who made the sale from the sheriff's office at such time, then such redemption may be made to the sheriff; and in his absence, to the under-sheriff or any deputy present at such office, &c." The remainder of the section provided that when a redemption is made prior to the last day, a statement of the particular facts concerning it shall be immediately filed in the county clerk's office; and the succeeding section provided that when one redemption had been made, any other creditor entitled to do so, might make a redemption within twenty-four hours after the last preceding redemption. So that, as the law now exists, a redemption by a creditor "on the last day of the fifteen months," to be valid and effectual, must be made at the sheriff's office. The statute is plain and peremptory in this respect, and cannot be disobeyed or disregarded. It is an express and positive requirement, and must be strictly followed, or nothing is accomplished.

There is no force in the suggestion, that, where the sale is made by the sheriff in person, the redemption is not required to be made at the sheriff's office, but may be made to him personally away from his office, and after office hours. Such a construction receives no countenance, either from the language of the law or the object of the requirement. That object was, to prevent surprise in cases where a redemption is effected just before the end of the time allowed; and this is attempted to be done by fixing upon a common public place, to which the creditors interested may resort, and inform themselves of what has been transacted, so that they may take the necessary measures to protect their rights according to the exigency which the circumstances may create or disclose. In this view, it is of no sort of importance whether it is the sheriff, or an under-sheriff or deputy, that made the sale. Nor is there any foundation for the argument, that, if the officer who made the sale is not present at the office, the redemption may be made to the sheriff himself, wherever he

may be found. The statute will bear no such construction. Its fair reading is, that, if the officer (under-sheriff or deputy) who made the sale is present at the office, although the sheriff be also present, the redemption is to be made to the officer who made the sale. If such officer be absent from the office, and the sheriff be present, the redemption may be made to him. If the officer making the sale and the sheriff be both absent from the office, the redemption, in that case, may be made to the under-sheriff or any deputy present at such office. The "absence" of the sheriff mentioned in the statute clearly has reference to his absence from his office, and can mean nothing else. No other absences than from the sheriff's office are mentioned. If a redemption could be made to the sheriff out of his office, then the provision that they shall be made at the sheriff's office has no effect; but construing the word "absence" to mean absence from the office, and every word has effect according to what was the obvious purpose of the statute.

Since the act of 1847, therefore, a redemption by a creditor, on the last day allowed for redeeming, to be valid and effectual, must be made at the sheriff's office of the county in which the sale took place. The redemption attempted by Gilchrist was on the last day of the fifteen months, and was made to the sheriff at his dwelling house, and not at his office. It was, consequently, ineffectual and void, and did not entitle him to a deed of the premises in dispute. In his case, there is no excuse for not conforming to the law. There was no attempt to redeem at the office, although an officer was there present to whom a redemption could have been made. The diligence of his attorney in seeking the sheriff elsewhere is of no importance, for that fact cannot supply the omission to redeem at the only place where it could lawfully be done.

Being of the opinion that the attempted redemption of the plaintiffs' ancestor was wholly inoperative and void, it is unnecessary to pursue the inquiry as to his right, under the statute, to redeem.

The order of the Supreme Court should be affirmed, with

costs, and judgment absolute rendered against the appellants.

Concurring, DAVIES, Ch. J., PORTER, SMITH, and PECKHAM, JJ.; HUNT, J., *dubitante.*

MORGAN, J. (dissenting.)  The plaintiff's title depends upon the validity of the redemption, under a sheriff's sale of the premises, made on the last day of the fifteen months, by a junior creditor, Charles Gilchrist.

It appears that the attorney of Charles Gilchrist went to the sheriff's office, in the village of Cooperstown, on two or three different occasions, on the last day of the fifteen months, during business hours, with the money and papers necesssary to redeem, but was unable to pay the amount to the sheriff, under-sheriff, or his deputies, at the office, by reason of their actual absence from the office; that the sheriff resided in the same village, but the attorney was unable to find him in his office, or out of it, until about half-past 9 o'clock at night, when he found him at his house, and there served upon him the necessary papers and paid him the requisite amount to redeem.

I think there is no difficulty in holding that the redemption would be good and sufficient, if it had been made to the sheriff at his office, instead of being made to him at his house. The redeeming creditor having gone to the proper office, during business hours, for the purpose of redemption, the question arises, whether it was competent for him to follow the sheriff up to his house in the same village, and there leave his evidence and pay the amount necessary to redeem. This question depends upon the construction to be put upon the statutes in relation to redemptions by mortgagees and judgment creditors.

The manner of acquiring the title of a purchaser of lands upon execution, was well defined by the law of this State before the act of 1847. The redeeming creditor could pay the amount to the sheriff when he could find him in the county. By section 3 of chapter 410 of the Laws of 1847, it is declared that all redemptions which should thereafter be

made, on or after the last day of the fifteen months, by any creditor, should " be made at the sheriff's office ;" and it was made the duty of the officer making the sale " to attend at said office during the last day for making redemption, and during the time thereafter in which such redemption may be made ; and in the absence of the officer who made the sale from the sheriff's office, then such redemption may be made to the sheriff, and in his absence to the under-sheriff or any deputy present at such office." This language is not entirely clear, for it may be read so as to allow the redemption to be made to the sheriff wherever he can be found in the county, provided the officer who made the sale is not present at the sheriff's office. The more natural meaning is, that the absence of the sheriff, spoken of, is his absence from his office, or from the place where his office is kept. It is, moreover, an important question in this case, whether the sheriff is *absent*, within the meaning of the act, if he is to be found in the vicinity of his office in the same village.

It could hardly be intended that the officer who made the sale should be deemed absent from the office, if he had merely gone to his lodgings in the immediate vicinity. A literal construction of the statute would require him to remain in the sheriff's office, day and night, for twenty-four hours, after every succeeding redemption.

There is nothing in the duty to be performed which requires the sheriff to take the papers from the hand of the redeeming creditor in the office, if he is in the immediate neighborhood, so as to be constructively present, or within easy call.

It has been held in several cases, that this statute should be construed liberally toward the redeeming creditor. When the intention is doubtful, the court will interpret the statute as is most equitable and convenient ; and that construction will be adopted best suited to accomplish the general purpose. And when a direction contained in a statute is not of the essence of the requirement, but only relates to the mode or manner of it, it may be considered as directory only (*Rex* v. *Loxdale,* 1 Burn., 447 ; *Marchant* v. *Longworthy*, 6 Hill, 647), as when it relates to some immaterial matter. (*People* v. *Scher-*

*merhorn,* 19 Barb., 611.) There are no negative words to render the minute directions imperative; and affirmative words do not necessarily render them imperative, except, perhaps, when they confer jurisdiction. (Dwarris on Statutes, 611.) And it may be safely said, that when any particular construction would lead to an absurd consequence, it will be presumed that some exception is intended by the legislature to avoid such a conclusion. (*Commonwealth* v. *Kimball,* 24 Pick., 370.)

Now, what is there in the nature of the duty to be performed by the sheriff (after the redeeming creditor has substantially tendered a redemption, with all the regulations imposed upon him, at the sheriff's office), to require him to go into his office after 9 o'clock in the evening, and take the papers and money from the redeeming creditor? For succeeding creditors, after going to the office and finding no one in, must necessarily call upon the sheriff to find out what had been done; and they would have no difficulty in finding the sheriff when he was at his own house, in the neighborhood of his office. To require the sheriff to remain actually in his office after business hours, to attend to redemptions, would be absurd. If he is within call in the same village, he ought not to be regarded as *absent,* within the meaning of the statute.

The object of the statute will be fully attained by requiring the redeeming creditor to go to the sheriff's office to make his redemption. When he is there, with his papers, ready and willing to comply with all that is essential on his part to perfect his right, it would be wrong and unjust in the extreme to deprive him of his right merely because an officer was not present in the office to receive his money, but who afterwards received it at his house, without the formality of walking over to his office for that purpose.

It is, doubtless, necessary to the perfection of his right that the redeeming creditor should find the sheriff, and pay or tender him the amount necessary to redeem. The legislature did not suppose that the sheriff would hide himself, to avoid being found; but it was supposed, doubtless, that his office

would always have an officer at hand to perform the duties appertaining to the office.

After the creditor has done all he could to perfect his right, there is nothing further essential to be done, except for the sheriff to take his money. Whether he takes it at his office or at his house, really is of no importance whatever.

In my opinion, the sheriff is not *absent*, within the meaning of the statute, when he is in charge of his office and at his own house in the same village; that the statute is imperative to require the redeeming creditor to tender a redemption at the sheriff's office; but if there is no officer in the office to accept the tender, it is sufficient for the redeeming creditor to pay the sheriff the amount necessary to redeem at his own house or elsewhere in the same village, wherever he can be found, at any time before 12 o'clock at night.

It is unnecessary to decide now whether the creditor, after going to the sheriff's office to effect a redemption, and being unable to do so on account of the absence of the proper officer, may not afterwards pay the sheriff the amount necessary to redeem, wherever he can find him in the county. The redeeming creditor, as a matter of justice, ought not to lose his right of redemption because the officer who makes the sale neglects his duty and keeps away from the sheriff's office.

It is sufficient to dispose of this case to hold, that the redeeming creditor, having substantially tendered a redemption at the sheriff's office, as required by the statute, was afterwards at liberty to complete it by leaving the necessary papers with the sheriff in charge of the office, and paying him the amount necessary to redemption at his house in the same village, at any time before 12 o'clock at night.

The result is, that the judgment should be reversed, and a new trial denied.

LEONARD, J., also dissented.

Order affirmed.