Spencee, J. (dissenting).
This is an action of ejectment brought by the plaintiff against the defendant to recover possession of certain lots on the westerly side of Fourth avenue, between one Hundred and Fourteenth and „ one Hundred and Fifteenth streets, in the city of New York.
The cause was tried before Judge Jones and a jury, at a circuit of this court, and a verdict for the defendant directed by the court.
It was admitted on the trial that in the year 1846, Francis Price was the owner of the premises, and the common source of the title claimed by both parties.
On the 9th day of March, 1846, Cornelius Brinckerhoff and another recovered a judgment against the said Francis Price, for the sum of four thousand three hundred and ninety-five dollars and twenty-eight cents, in the supreme court of the State of New York, which judgment was duly docketed at the time of its entry, *540 and became a lien upon the real estate which is the subject of this controversy.
On the 10th day of September, 1847, the said Francis Price, under an order or decree of the court of chancery of the State of Yew York, conveyed all his estate, real and personal, to one John J. Latting, in trust to pay certain debts mentioned in said order or decree, by which conveyance, the legal title to said premises vested in said Latting,. subject to the lien of said judgment.
On the 13th day of. April, 1848, under and by virtue of an execution issued upon said judgment in favor of said Brinckerhoff and another, the sheriff of the city and county of Yew York, duly sold all the right, title and interest of said Price, in and to said premises at the date of the recovery and docket of said judgment, to one Charles O. Eichardson, and duly filed the certificate of said sale in the office of the clerk of said county of Yew York.
On the 10th day of April, 1849, the sum of seventy-two dollars and five cents (which sum was conceded by the parties to have been ■ sufficient to pay the amount required to be paid for the redemption of said premises from said sale) was paid to said sheriff, and a receipt was given by said sheriff for the sum to one Isaac Adriance. The receipt recited that the money was received from Francis Price, for and on account of the redemption of said premises from said sale, and upon the same paper and below the receipt, was a memorandum in the handwriting of said Isaac Adriance, then an ■attorney and counsellor at law in practice, which reads as > follows : “I asked Mr. W estervelt whether that amount was all that was necessary to redeem all the property sold by virtue of the execution % He answered that it was. I told him I wanted to redeem all that was sold ; I paid the sheriff the above money, and took the above receipt for F. Price.”
*541 The question of the admissibility of the receipt was discussed before the court on the trial, who decided to admit the same in evidence. As the verdict was for the defendant, this question does not arise on this review of the exceptions in the case.
Edgar Ketchum, a witness, testified that Mr. Adrian ce was sometimes retained as the attorney and counsel for Francis Price; but the witness had no knowledge of their relations in this transaction. This receipt was never filed nor recorded in any public office, but was kept in the private custody of Mr. Newbold Lawrence. There was no evidence that the sheriff’s grantee, or any subsequent grantee under him of the premises, had any knowledge of the existence of the said receipt.
On the 13th day of August, 1850, the said John J. Latting, reconveyed to the said Price, all the property then in his hands, which had been before that time conveyed by said Price to him as stated, including the premises in question.
On the 20th day of November, 1851, the said Price-" conveyed the premises to one John F. Darby, and by divers other conveyances, in direct line from said Darby, the title of said Darby to said premises became vested on or before the 19th day of October, 1867, in one Martin Braisted, who conveyed the same on the 1st day of November, 1867, to the plaintiff. In the mean time, while the said Braisted claimed title to the premises, and on the 19th day of October, 1867, the sheriff of the city and county of New York duly executed and delivered a deed of conveyance of said premises to Isaac B. Findell, the assignee of the purchaser at said sheriff’s sale (the said Charles O. Bichardson), who, subsequently and soon after the conveyance by the sheriff, conveyed the said premises to one Thomas Thorpe, who conveyed the same to the defendant, without notice of. the alleged redemption on the 26th day of March, *542 1868, in consideration of the sum'of nine thousand five hundred dollars paid by the defendant.
The plaintiff commenced this action on or about October 14th, 1868, and Ms complaint alleges substantially that he, the plaintiff, has lawful title, as the owner in fee simple, to the said premises (describing the same), and that the defendant is in the possession of the same, and unlawfully withholds the possession thereof from the plaintiff, and concludes with the usual form of prayer for possession and damages for withholding the same.
The defendant admits by his answer'that he was and is in possession of the premises, claiming an estate in fee simple to the same under the sale and conveyance by the said sheriff, and denies the plaintiff’s title.
Upon this issue the cause was tried, and the evidence given as heretofore stated. The case was heard at the general term upon a case and bill of exceptions.
The first exception by the plaintiff was taken to the ruling of the court on the trial, upon the question of the admission of the deed of conveyance from the sheriff to the said Findell, pursuant to the sale under the execution. As I concur in the opinion of Ch. J. Barbour, that this exception was not well taken, I shall not discuss the same.
The only other exception of the plaintiff was to the ruling and direction of the court, directing the jury to find a verdict for the defendant, and this exception raises all the questions of law applicable to the case at bar, and which require consideration.
With due respect to the opinion and conclusions of the learned Chief Justice and Judge Freedman, who were my associates on the hearing of this case at general term, I feel compelled to dissent from the same, and to hold the ruling and direction of the judge on the trial'to be correct in the premises, and that the excep *543 tion thereto should be overruled and judgment rendered for the defendant on the verdict.
The defendant’s counsel claimed on the trial that the plaintiff was bound to allege and prove that he was or had been in possession of the premises in question ; and as he had neither alleged nor given proof of his possession, nor of the possession of the person from whom he derived his title at the time of the conveyance, that he was not entitled to recover.
There is much to be considered and said in favor of this position of the counsel in a case like the one at bar.
The authorities cited by the counsel unquestionably establish the legal position that a grantee who receives a grant of land, occupied and possessed by a person claiming title adversely to the grantor, takes nothing by the grant as against the party holding the adverse possession, for the grant is void, as against him. Such grantee cannot sue and recover the possession in Ms own name. The recovery must be in the name of the' grantor who had actual possession, or who held the legal title at a time when no adverse possession was maintained against the same.
But I fail to recognize from this position that in cases of ejectment the plaintiff is bound to allege and prove possession.
Proof of the legal title in the plaintiff is prima facie sufficient. Under the practice prior to the code, he must have averred in his declaration that on some day specified, after his title accrued, he was in possession, and that afterwards, on a day stated, the defendant entered into the premises, and unlawfully withholds from the plaintiff the possession thereof, &c., &c. ; in other words, he must allege—1st. Possession in himself ; 2nd. Ouster therefrom by defendant; 3rd. The unlawful withholding of possession by defendant (2 R. S. 304, § 7). I think this, however, only directs as *544 to the form of the pleading only, and it does not follow that the plaintiff was bound to establish all these allegations by proof, for a subsequent section (2 R. S. 306, § 25) provides : “It shall not be necessary for the plaintiff to prove an actual entry under title,” &c.., &c., but if the defendant contests the title of the plaintiff, because the grant of the premises was made to him, when adverse possession was held against the title of the grantor, he must prove the fact after plaintiff has established his claim of title. I think the onus probandi lies with the defendant to establish that fact; it shall be sufficient for him to show a right to the possession of such premises at the time of the commencement of the action, as heir, devisee or purchaser, or otherwise. This is, undoubtedly, the rule of evidence in ejectment at the present time, although the form of the pleadings and the practice under the code has been changed by the adoption of the code.
If my decision rested solely upon this point of the defense I should hold against the defendant; but there are other points in favor of the defendant to be considered, that I hold to be sufficient to support and sustain the rulings of the court below, independent of this question.
First. The defendant contends that there was no legal or valid redemption of the premises from the sheriff’s sale. That even assuming it as a fact, that Price, the judgment debtor, did pay the money to the sheriff and take the receipt in question, and did do all that laid within his power to effect the redemption of the land in his (Price’s) favor ; that there was not, in fact and law, a redemption of the premises from the sale, for the reason that at the time of the proposed, or attempted, or apparent redemption, Price had no right' to redeem the same ; that he was not the owner of the premises at that time; that he had before that time conveyed all his estate and title to the same to one *545 Latting, who was the true and lawful owner of the same, at the time of, and continued to be such owner for some time after, the said alleged redemption, and that he (Latting) was the only person who had the legal right and power to redeem the premises from said sale, and therefore the redemption claimed to have been made by Price, when he had not the legal title to the premises, was void and of no effect.
The plaintiff, in reply to this position, held that the conveyance to Latting was a trust conveyance, and also an involuntary conveyance, by order of the court of chancery, and that the title to the property, on the payment of the debt that was the subject of the trust, would revert to him by operation of law, without a re-conveyance, and therefore that Price’s interest in the premises was of that character that entitled him to redeem the same.
There can be no doubt that in a certain sense the conveyance by Price was an involuntary act, but it has been decided in the court of appeals that the legal effect of an act done in obedience to the decree of a court of competent jurisdiction, is the same as a voluntary act (Chatauque Co. Bank v. Risley, 19 N. Y. 366), so that the law applicable to this case is that applicable to any trust deed executed by any debtor, and in such case there can be no doubt that there is a resulting trust to the debtor, after the payment of all the debts to secure which the trust instrument was executed.
By the recitals in the deed of reconveyance from Latting to Price, it affirmatively appears that the purposes for which this trust was created had not been satisfied on the day when the payment was made to the sheriff. The legal title was, therefore, on that day solely vested in the trustee. When there is a valid trust for the sale of land the party creating the trust, and those holding derivative titles under him, have no *546 rights, legal or equitable, until the purposes of the trust are satisfied (Briggs v. Davis, 21 N. Y. 574).
The statute in regard to redemptions is in the following language:
“ Such redemption may be made—
“1. By the person against whom the execution was issued and whose right and title were sold in pursuance thereof; or,
“2. If such person be déad, by his devisee of the premises sold, if the same shall have been devised ; and if the same shall not have been devised, by the heirs of such person; or,
“ 3. By any grantee of such person who shall have acquired an absolute title by deed, sale under mortgage or under an execution, or by any other means, to the" premises sold, or to any lot, tract, parcel or portion which have been separately sold ” (2 Edm. St. R. S. 384, § 46).
Under the decision of Briggs v. Davis, John J. Lathing, on the 10th day of April, 1849, the date of the said payment, was the grantee of Price, the debtor, and had acquired an absolute title by deed, and then held such absolute title.
Is the position of the plaintiff’s counsel correct, that Price, the judgment debtor, had the right to redeem, notwithstanding his trust conveyance to Latting ? Ho authorities are cited in support of the affirmative, but the counsel rests solely upon the express letter of the statute. The defendant’s counsel, on the other hand, cites the case of Husted ■». Dakin, 17 Abb. 137, in opposition to this view. In that case, one Dakin owned certain premises which were subject to a mortgage and to certain judgments; on the 16th March, 1857, the sheriff sold Dakin’s right, title and interest in the premises under execution issued on one of said judgments, to one Husted. On the 18th day of April, 1857, part of the property was sold under foreclosure *547 of the above mortgage, and a large surplus resulted, and on the 39th day of June, 1857, after the deed in the foreclosure sale had been delivered, Dakin, the judgment debtor, duly tendered to the sheriff, who made the sale, the requisite amount to redeem. A reference in regard to the surplus moneys was subsequently ordered, and on the proof the referee awarded the whole surplus to Husted, the purchaser of Dakin’s right, title and interest. The cause came before the court on a motion to confirm the referee’s report. The justice, after advisement, confirmed the report, and the same was on this point affirmed. The opinion delivered at special term passed directly upon this question. “It was conténded on the argument,” says the justice, “that this sheriff’s sale was null and void, by reason of the offer of Dakin to redeem the premises from the sale, and the tender by him to the sheriff of, the amount bid by the plaintiffs thereat. In June last, after the plaintiffs had become the absolute owners of the property, by reason of the purchase on. the mortgage sale, and the delivery to them of the sheriff’s deed on such sale, the defendant Dakin tendered to the sheriff the amount bid by plaintiffs on the sale on the 16th of March, 1857.
“The difficulty in regard to this redemption is, that at the time it was mad'e the defendant Dakin had no right, title or interest in the premises sought to be redeemed. The plaintiffs had succeeded to all his rights ; they had in fact become the-assignees by virtue of the purchase and sale on the 18th of April, 1857. This offer to redeem was therefore of no more import or effect than that of any stranger; and it would not, 1 am sure, be contended that an offer by such stranger to pay the bid on the sheriff’s sale and claim from the sheriff the transfer of the purchaser’s rights, would entitle him thereto, or would divest that purchaser of rights thus acquired, and render the sale nuE and void. It seems *548 to me that the offer of Dakin to divest those rights is equally ineffectual; and that such an offer did not render this sale void, and thus revive the lien of the judgments by virtue of which it was made.”,
I can find no case in this court that conflicts with the views here expressed, which fully agree with my own on this subject, and therefore I feel bound to follow that decision until a higher tribunal shall lay down a different rule of law. Independent of authority, I hold, on principle, that this rule is sound. The right acquired by a purchaser at a sheriff’s sale under execution, is absolute at the moment the sale is made, against all the world, except those within the purview of the statute. The persons entitled to redeem, and the mode of redemption, are clearly laid down. “The statute is plain and peremptory in this respect, and cannot be disobeyed or disregarded. It is an express and positive requirement, and must be strictly followed, or nothing is accomplished” (Gilchrist v. Comfort, 34 N. Y. 241). The statute uses a phrase in the alternative that has been shortened in form, but it is of the same essential meaning in deeds, “the party of the second part, his heirs or assigns.” How, it can never be contended that where the heirs have legal rights the party has also, for nemo est haeres viventis (Campbell v. Rawdon, 18 N. Y. 416) ; nor can it be more successfully argued that where the estate has passed to the assigns the party can exercise a legal right over the estate. The jus disponendi is gone for ever. To shorten, in like manner, the statute in question, it would read “the judgment debtor, his devisees, hems or assigns.”
If there were, within the time of redemption, a valid devise of the property, the heir (not being such devisee) could not redeem. If there were a legal transfer of the property by the debtor, and he should die before the expiration of the time to redeem, the heir could not re *549 deem, for such heir would be a stranger. I hold that, under the statute, only one person or class named can redeem, and that class last named has the better right. If the heir cannot redeem as against the assigns, what better right has the debtor under the statute % The right of redemption is a right in rem, and can only be exercised by one who has the legal title to the premises at the time of the alleged redemption. Therefore, I hold that as Latting had the absolute title by deed, on the 10th day of April, 1849, the payment to the sheriff was not, and could not be, a redemption within the meaning and intent of the statute.
The only thing that has seemed to be against this view is one single sentence in an opinion writteno by Judge Comstock, in the case of the Chatauque Co. Bk. v. Risley, 19 N. Y. 373 ; but the point was not presented in the case, seems not to have been discussed by the counsel, and apparently this was inadvertently written. If it had been the result of reflection, I should have given this expression the consideration due to that eminent jurist, but, under the circumstances, I am bound to follow the express adjudication of the general term of the supreme court on the question.
There is another question to be considered in this case that relates to and bears upon the right of the defendant, as a bona fide purchaser, to the possession of the premises, as against the right and title of the plaintiff, even if a valid redemption had been made.
Before the act of 1847, hereinafter referred to, the legal result of a redemption from a sheriff’s sale was to make the title under the certificate of sale entirely null and void, without any evidence in writing or of record to show such redemption.
This was in effect similar to the common law in respect to the conveyance of real estate, which, in the early period of English history, was usually without writing (4 Kent Com. 491). With the increase of *550 knowledge, conveyance by writing became more prevalent, and by the act of 29 Chas. II., no conveyance could be operative without an instrument in writing, duly sealed. The next great advance in legislation for the protection of strangers was our recording act, by which all persons interested might ascertain the names of the rightful owners and their respecctive interests in real property; but there were involuntary sales of real estate which were mot affected by such legislation. This mode of obtaining payment of debt by the forced sale of the debtor’s property through the officers of the law is of modern origin, and was entirely unknown to the common law. It is worthy of note that the act that originated our modern process of sales by execution was passed in 1732, in the 5 Greo. II., with especial reference to the American colonies, and made land, hereditaments and real estate therein chargeable with debts and subject to sale under execution the same as personal property (4 Kent, 429). At first no provision was made for redemption from such sales, but this was afterwards incorporated in the law. And to enable persons to know of such sales when they were made redeemable, it was enacted that the sheriff or officer who made the sale should file in the proper office within ten days after, the sale, a certificate stating the facts of such sale, so that all persons might know of the rights acquired by the purchasers under the sales so made. Bat the provision for recording such certificate was not enacted until 1857, and applied only to future certificates. I notice that the learned Chief Justice considers that the defendant’s title was defective, by reason of not complying with the law in this regard. The subsequent payment to the sheriff by the person entitled to redeem was a complete revocation of the sale, and rendered the title of the purchaser null and void; but no provision whatever was made in the *551 original statute by which the public could be advised of the fact.
This defect in the law was the subject of legislation in the year 1847, when an act was passed entitled “ An act to amend title five of chapter six of the third part of the Revised Statutes of ‘execution against property.’ ” The first four sections of this law apply specifically to the acts of creditors, but sections 5 and 6 are as follows :
“ Sec. 5. Whenever any redemption shall have been made, of any real estate so sold, it shall be the duty of the officer making such sale, or of any other person who may lawfully act in his behalf, to execute to the person making such redemption, his certificate, truly stating all such facts transpiring before him at the making of such redemption, as shall be sufficient to show the fact of such redemption.”
“Sec. 6. Such certificate may be proved or acknowledged as deeds are required to be, to entitled them to be recorded, and being duly recorded in the clerk’s office of the county where the real estate so sold is situate, shall have the same effect as against subsequent purchasers and incumbrances as deeds and conveyances duly proved and recorded ; and such certificate or the record thereof, or a duly authenticated copy of such record, shall be received in all courts and places as prima facie evidence of the facts therein stated” (3 Laws 1847, ch. 410, p. 508 ; 4 Edm. Stat, at Large, 630).
These sections apply to redemption by the judgment debtor as well as the acquii’ement of title by the other judgment creditors. It provides the remedy for the defect in the former law, and is to be construed liberally. It enables the redeeming debtor to put the evidence of his act on record for all time, and gives him and his grantees the means of proving it after all the parties to the transaction have passed away, but it puts him in *552 the same position that the recording act puts the grantee in. It does not compel the party to file his certificate, but it malms his title dependent upon it. As jbetween grantor and grantee, the delivery of the deed instantly transfers the title, and as between the holder of the certificate and the judgment debtor, the title ceased on due payment. This rule in respect to a deed does not prevent the transfer of the title from such grantor to a bona fide purchaser without notice of the prior deed, and so tire bona fide transferee of a certificate of sale takes a like good title when he purchases without notice of redemption. Otherwise the mere act of payment would have more solemn legal weight than the delivery of a sealed instrument. In the case at bar, the party receiving the certificate, instead of recording the same, chose to keep the paper in his possession without giving an opportunity to innocent parties to be put upon their guard. It is in such case the sound rule that where one of two parties must suffer, he should be exonerated who is guiltless, and he should be held liable who causes the wrong to be done.
It may be suggested, however, that the recording of the deeds from Latting to Price, and from Price to his successive grantees, gave notice to the world of this claim, but there is no force in this suggestion, for the reason that the holder of the certificate after the time to redeem has elapsed, has no legal title to the premises. Until the delivery to him of the sheriff’s deed, he has only an absolute equitable or inchoate title to the premises, and the owner of the fee continues to have the legal title (Farmers’ Bank v. Merchant, 13 How. 10, 12 ; Smith v. Colvin, 17 Barb. 157, 161). Therefore, Mr. Latting, notwithstanding his failure to redeem the premises, had a title that he could convey, and that he did convey, and that Mr. Price subsequently conveyed ; a legal title subject to be defeated by the de • livery of the sheriff’s deed, a title that might have been *553 made absolute on obtaining a simple release from the holder of the certificate, a title that authorized the party to retain possession of the premises granted. But when the sheriff’s deed was delivered, then that title was extinguished and the debtor or owner divested of his estate, providing there had been no redemption, and in this case, by reason of the failure of the holder of the receipt, treating it as a sufficient one, to give the world notice of the redemption, this case is to be treated as if there had been no attempt made to redeem.
There was in this case a certificate of sale which was filed in the office of the clerk of the city and county of Hew York. The bill of exceptions does not state the date of the filing, but as no question was made thereon, and as the law imposed upon the sheriff the duty of filing such certificate within ten days after the sale, the presumption of law is that such filing was done within the prescribed time (Hartwell v. Root, 19 Johns. 345). The defendant paid the sum of nine thousand five hundred dollars for the premises in question, which seems to have been its value at the time of this purchase. He was a bona fide purchaser without notice and without having it in his power by any means to obtain notice or information. If this cause is decided in favor of the plaintiff, and the law is decided to be that the holder of a certificate of redemption may conceal the same to the injury of others without any liability to himself, there can be no safety in passing titles that are derived through deeds from the sheriff under sales on execution. This construction will in the end work a great wrong to judgment debtors themselves, for no party would be willing to bid the fair value of premises so sold and take such risk, so that where no redemption in fact should be made the judgment debtor would be deprived of his property for a mere fraction of its value. I cannot believe that such a construction of the.law was ever intended.
*554 I think the learned Chief Justice errs in his views upon the effect of the provisions of the recording act. Until the law of 1857, I believe that it was the invariable practice of the members of the legal profession to search for sheriff’s certificates filed in the county clerk’s office. This is a public matter of which the courts take judicial cognizance (Swinnerton v. Columbian Ins. Co., 37 N. Y. 174). If this decision is correct, the universal action of the bar and the officials throughout this State has been wrong, and every title taken under a sheriff’s certificate is in jeopardy. An examination of the law in relation to executions (2 Rev. Stat. § 3, 44, 45), however, shows that it was never contemplated that such certificates of sale should be recorded, which construction is strengthened by the enactment of the law of 1857, providing for such record. Now, as heretofore suggested, the sheriff’s certificate does not create a lien, mortgage or assign any interest in real estate, nor does it affect the title to real estate in law or equity, any more than the entry and docket of a judgment, or the filing of a notice of Us pendens. It creates nothing ; it only declares that which already exists, and in the meaning of the recording act it does not affect the legal title. The sheriff's - deed on the sale affects the legal title, and this must be, and in this case it was, recorded.
For these reasons I hold that the exceptions should be overruled and judgment ordered for the defendant on the verdict.